## UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF LOUISIANA

## SHREVEPORT DIVISION

BRENDAN D. BOHANNAN                    CIVIL ACTION NO. 19-1476-P

VERSUS                                 JUDGE FOOTE

CAPTAIN CAUSEY, ET AL.                  MAGISTRATE JUDGE HORNSBY

## REPORT AND RECOMMENDATION

In accordance with the standing order of this court, this matter was referred to the undersigned Magistrate Judge for review, report and recommendation.

## STATEMENT OF CLAIM

Before the court is a civil rights complaint filed by pro se plaintiff Brendan D. Bohannan ("Plaintiff"), pursuant to 42 U.S.C. § 1983.  This complaint was received and filed in this court on November 13, 2019.  He was incarcerated at the Bossier Medium Correctional Center in Plain Dealing, Louisiana, and is now incarcerated at the Caldwell Correctional Center in Grayson, Louisiana.  He names Captain Causey, Susan Tucker, L. Fisher-Culpepper, Jason Burns, Quinton Black, Deputy Rogers, Nurse Lanier, Dr. Flye, Nurse Hamm, Mr. Calhoun, Deputy Hadden, the Steven Hoyle Intense Substance Abuse Program ("SHISAP"), Deputy Lindon, Damon Bowles, Deputy Lyons, the Inmate Counsel/Law Librarian, Dr. Flye's Nurse, Unknown Nurse 2, Mrs. Boudreaux, Mrs. Burton, Mrs. Frizzell, and Mrs. Townsend as defendants.

Plaintiff claims Captain Causey and Mrs. L. Fischer-Culpepper conspired with the other Defendants to have him removed from SHISAP without a disciplinary reason.  He

claims that on September 25, 2019, he was removed from SHISAP because of sex offender hazing, a PREA allegation of rape at Raymond Laborde Correctional Center in 2014, sexual harassment, and Defendants' failure to properly investigate his claims. He argues his claims were not properly investigated because they required too much work and involved sexual details.

In August of 2019, Plaintiff took a set of Hi-set-GED Tutor tests. An inmate in the class knew Plaintiff from the Raymond Laborde Correctional Center and the Rayburn Correctional Center. Plaintiff claims the inmate told him he knew he was a "ho." Plaintiff told Ms. Wallace he could not tutor the inmate and he had to quit his testing immediately. He reported the incident to Mrs. Fisher-Culpepper. Mrs. Fisher-Culpepper, Ms. Stinson, and Mr. Calhoun talked with Plaintiff. He claims this incident is one of the reasons he was removed from SHISAP.

Plaintiff claims participants in SHISAP were given sex offender workbooks which were kept in the classroom. He claims these workbooks should have been better protected by the staff, including the teacher Mr. Calhoun. He claims an offender got a copy of the Phase 2 workbook and removed two pages from it. He claims that on September 24, 2019, the inmate or one of his friends placed the workbook pages on his bed. Plaintiff claims the placing of the workbook pages on his bed was sexual harassment, sex offender hazing, and teasing. He claims his sex offender profile was no longer a secret and he was no longer safe. Plaintiff claims that on September 24, 2019, Sgt. Normand found his claim regarding the incident to be credible and with merit.

Plaintiff admits he erroneously sent Nurse Lanier a sick call request stating he needed help regarding a PREA matter.  He claims that on September 25, 2019, Deputy Rogers escorted him to sick call and told him to face the wall while he secured a document. Plaintiff told Nurse Lanier that two sex offender phase two workbook papers were placed on his bed and he felt very uncomfortable.  He told her he had been raped while incarcerated in Cottonport.  He also told her he suffered from PTSD because of attacks on his life in August of 2016 and in February of 2017 in New Mexico.  Plaintiff claims Nurse Lanier then asked him if he called the PREA hotline and he informed her that he attempted to call but no one answered.  He claims Nurse Lanier told him his situation was a PREA matter and would be handled by security.  He claims Nurse Lanier never told him that he was being removed from the treatment program.  He claims he twice told Nurse Lanier that he was considered a rat, a prison homosexual, and sex boy and had been raped.  He claims this weakened his case with her and the staff that worked at SHISAP.  He claims Nurse Lanier kept his medical status secret from him because she recommended that he be placed on protective custody.  He claims this recommendation removed him from the treatment program.  He claims Nurse Lanier turned the matter over to Deputy Rogers who had been in the room the entire time.

Plaintiff claims Sgt. Quinton Black has known him since 2003 when he was incarcerated at the St. Tammany Parish Jail.  He claims Sgt. Black knew he was a sex offender and a two or three time convicted felon.  He claims Sgt. Black was on duty on September 25, 2019 when the decision was made to remove him from the treatment

program and house him at Bossier Medium Correctional Center. He claims Sgt. Black told him that he was not being kicked out of treatment but that he was being removed from SHISAP for his safety and the safety of the program. He claims he asked Sgt. Black to speak to Mrs. Fischer-Culpepper and he told him to write her on the kiosk once he was at Bossier Medium Correctional Center.

Plaintiff claims he asked Captain Causey if he could speak to Mrs. Fischer-Culpepper and he refused his request. He claims Captain Causey told him he did not want to remove him from treatment, but he had to look out for the safety of the facility and the program. He claims Captain Causey told him he was causing problems and he could only transfer him to Bossier Medium to finish his program, graduate, and be released on parole.

Plaintiff claims Captain Causey and Mrs. Fischer-Culpepper failed to conduct a proper investigation regarding the workbook pages and sided with the perpetrator. He claims the perpetrator was shown favoritism and allowed to remain in the treatment program. He claims Mrs. Fischer-Culpepper did not want him to be her student once a month at the Covington District Probation and Parole Office for the next seven years.

Plaintiff claims that on September 25, 2019, Captain Causey transferred him to Bossier Medium for protective custody because of his P.T.S.D and to finish his program. He claims the Louisiana Parole Board sent him to SHISAP as a special condition of his parole. He claims he contacted Project Celebration Sexual Assault Advocates. Plaintiff claims Mrs. M. Townsend told him that if he contacted them again, he would be removed permanently from SHISAP. He claims this threat is blackmail.

Plaintiff claims he was housed in general population, not the trustee dorm.  He claims he saw five fights in five weeks in general population.

Plaintiff wrote two letters to Mrs. Fischer-Culpepper and Mrs. Melissa Townsend and one letter to Dr. Susan Tucker.  He claims he did not receive a response until he filed a grievance in the administrative remedy procedure.  He claims he wrote five grievances in the administrative remedy procedure between October 28, 2019 and December 1, 2019. He claims that on November 4, 2019 he received a response stating that he could graduate on November 15, 2019 if he had an approved address and stopped calling the PREA hotline.  He claims he was told that his calls to the PREA hotline made the Bossier Medium Medical Department look bad.  He was also told that if he called the PREA hotline again he would not graduate, and he would not be paroled.  Plaintiff claims this was blackmail, bribery, and extortion.  He claims Defendants tried to prevent him from seeking help from advocates and services.  He claims that in October, Ms. Ashley Fillingim who is a supervisor for Project Celebration Sexual Assault Advocates, visited him at Bossier Medium and tried to search through his situation and make sure he was treated fairly.  He claims Ashley Fillingim was aware of his unfair treatment and had spoken to him four or five times prior to visiting him.  He claims Deputy Mark Lyons spoke to Ashley Fillingim a few times on his behalf and things were positive with Project Celebration Sexual Assault Advocates for one month.  He claims that in November, Project Celebration Sexual Assault Advocate's Night Supervisor Andrea told him that they could no longer take his calls.  He claims Deputy Lyons never came to Bossier Medium to see him after his removal from

treatment and never sent him messages regarding his situation. Plaintiff claims Deputy Lyons was a PREA Coordinator/Investigator and violated his civil rights by not conducting a proper investigation into his PREA complaint.

Plaintiff claims Deputy Dominic Lindon came to talk to him several days before his graduation on November 15, 2019. He claims Deputy Lindon told him that Lori Fischer-Culpepper and Jason Burns wanted to talk him earlier that day but were unable to because there was not enough staff to bring him to the front. He claims Deputy Lindon told him that he was going to graduate, but if he kept writing the Parole Board and grievances in the administrative remedy procedure, his parole would be delayed. He claims Deputy Lindon also told him to stop calling the hotline.

Plaintiff claims Deputy Lindon threatened him and extorted him out of his parole. He claims Deputy Lindon told him that he would not go home if he kept exercising his civil rights. He claims Deputy Lindon tried to prevent him from seeking help from the PREA hotline.

Plaintiff claims Sgt. Damon Bowles is a night shift sergeant at the Bossier Medium Security Prison. He claims Sgt. Bowles threatened to have him removed from treatment and parole for constantly bothering Mrs. Boudreaux and writing on the kiosk to Mrs. Fischer-Culpepper. He claims Sgt. Bowles told him that he was not fit to be on parole. He claims Sgt. Bowles screens all kiosk messages during his shift. He claims Sgt. Bowles told him to stop sending messages about his program status to Jason Burns, Dr. Tucker, Lori

Fischer-Culpepper, and Mrs. Burton.  Plaintiff claims Mrs. Boudreaux wrote him two short notes on the kiosk telling him to stop writing.

Plaintiff claims Mrs. Frizzell told him that he was going to graduate.  He claims Mrs. Frizzell came to see him a few days after he was sent to Bossier Medium from SHISAP.  He claims he sent a message to Mrs. Frizzell, but she was busy and unreachable.  He claims she worked with Lori Fischer-Culpepper's demand to tell him that he would still graduate substance abuse treatment.

Plaintiff graduated substance abuse treatment on November 15, 2019.  He claims that five days after his graduation, Mrs. Fischer-Culpepper came to Bossier Medium to talk to him about his grievances to the parole board.  He claims she was in attack mode.  He claims Mrs. Fischer-Culpepper told him to stop writing letters and grievances to the Parole Board because it was a misuse of the administrative remedy procedure for multiple reasons and he could receive a disciplinary report for doing it.  Plaintiff claims this was an act of retaliation for exercising his legal right to the administrative remedy procedure.

Plaintiff claims that on November 26, 2019, he received a disciplinary report for bribery.  He claims Mrs. Fischer-Culpepper wrote the report two days after the incident and not within the 24 hour time period.  He claims Mrs. Fischer-Culpepper filed two different reports.  He claims he was told that Officers at David Wade Correctional Center told Mrs. Fischer-Culpepper to add to her report because her first one was too weak.

Plaintiff claims that at David Wade Correctional Center on December 4, 2019, the two disciplinary reports were allowed at his disciplinary board hearing.  Plaintiff was found

guilty due to the officer's version being more credible and due to the seriousness of the offense. He claims he was sentenced to 60 days loss of good time (suspended). Plaintiff appealed the Disciplinary Board decision to the Louisiana Secretary of State, James LeBlanc.

Plaintiff claims that at his parole hearing on January 9, 2020, the Chairman of the Parole Board Alvin Roche, Jr., told him that his disciplinary appeal had been denied by James LeBlanc. Plaintiff claims he had previously sent James LeBlanc a letter and a grievance about the write-up by Mrs. Fischer-Culpepper written in retaliation for his previous grievances.

Plaintiff claims Sierra Marlow, who is Secretary of the Louisiana Board of Pardon and Parole, is a cohort of Mrs. Fischer-Culpepper. He claims Sierra Marlow relays information back and forth. He claims Sierra Marlow received his four grievances and five letters that he sent to Board Members Keith Jones and Mr. Kelsey. He claims Jones and Kelsey were board members at his first parole hearing on June 4, 2019. He claims he sought assistance from Jones and Kelsey when he was wrongfully removed from the substance abuse treatment program. He claims Sierra Marlow did not allow his grievances to go to James LeBlanc, Mr. Jones, or Mr. Kelsey. He claims that in November of 2019, Sierra Marlow told him to stop writing letters and grievances to the Parole Board because they were causing unnecessary problems. He claims Sierra Marlow told him to be patient because his mother's address had to be approved by his parole officer.

Plaintiff claims his parole was rescinded because of a conspiracy to protect the staff of SHISAP and Bossier Parish. He claims this can be proven by the email sent by Sierra Marlow telling him that the board can no longer accept phone calls or correspondences from him or his family because of his lawsuit against the Parole Board and the Bossier Parish Staff.

The Parole Board rescinded Plaintiff's parole. Plaintiff was represented by an attorney. He claims corners were illegally cut even at the highest level which is the Secretary of State. He claims Warden Hooper of Hunt Correctional Center pulled him and his attorney aside and stressed to him the importance of staying write-up free for the 12 months prior to a parole rehearing.

Plaintiff claims Keith Jones was a Parole Board Member at both of his hearings. He claims that at the first hearing, Keith Jones voted to grant him parole, but at the next hearing on January 9, 2020, he voted to rescind his parole because he was found guilty of a disciplinary violation and his appeal was denied by the Secretary of State. He claims Keith Jones also asked his attorney if he was representing him in his federal lawsuit. Plaintiff believes this is a violation of his constitutional rights.

Plaintiff claims the chair of the parole board was Alvin Roche', Jr. Plaintiff claims Alvin Roche' made several mistakes during his hearing. Plaintiff claims Alvin Roche' called his lawyer by the wrong name. He also claims Alvin Roche' berated him and refused to accept the fact that his grievances had any merit. Plaintiff claims the Parole Board is biased against him.

Accordingly, Plaintiff seeks monetary compensation, punitive damages, the termination of Defendants, the arrest of Causey and Lanier, and reinstatement of his parole.

## LAW AND ANALYSIS

**Substance Abuse Program**

Plaintiff claims he was removed from the Steven Hoyle Intense Substance Abuse Program for non-disciplinary reasons.  Plaintiff mistakenly assumes that he has a Constitutional right to social services and rehabilitation programs.  Plaintiff claims he was terminated from the substance abuse program and transferred to Bossier Medium Correctional Center for protective custody.

In order to state a constitutional claim for either a procedural or substantive due process violation, Plaintiff must demonstrate that he was "denied a cognizable liberty or property interest clearly established either by state law or the United States Constitution." Wooley v. City of Baton Rouge, 211 F.3d 913, 919 (5th Cir.2000); accord Sandin v. Conner, 515 U.S. 472, 481–83, 115 S.Ct. 2293 (1995) (a prisoner has a liberty interest only in "freedom[s] from restraint ... impos[ing] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life");  Bryan v. City of Madison, 213 F.3d 267, 274 (5th Cir.2000) (property interest).  However, neither the Due Process Clause, nor any other provision of the Constitution affords inmates the constitutional right to educational or rehabilitative programs or services.  Beck v. Lvnaugh, 842 F.2d 759, 762 (5th Cir.1988); see also Smith v. Boyd, 945 F.2d 1041, 1043 (8th Cir.1991) (prisoners do not have a constitutional right to "social services.");  Newman v. State of Alabama, 559

F.2d 283, 292 (5th Cir.1977), rev'd in part on other grounds sub nom., <u>Alabama v. Pugh</u>, 438 U.S. 781, 98 S.Ct. 3057 (1978) (prisoners do not possess a protected liberty interest in educational programs, recreation opportunities, or in avoidance of being transferred to facilities where the programs are less comprehensive); <u>Bulger v. United States Bureau of Prisons</u>, 65 F.3d 48, 49 (5th Cir.1995) (no federal constitutional right to participate in an education or rehabilitative program while incarcerated).

Accordingly, Plaintiff's claims regarding dismissal from the Steven Hoyle Intense Substance Abuse Program for non-disciplinary reasons are frivolous and should be dismissed with prejudice as frivolous.

**Classification and Place of Incarceration Claims**

Plaintiff claims he was placed in protective custody and transferred to Bossier Medium Correctional Facility after the workbook pages were placed on his bed. He claims he was placed in general population and not the trustee dorm.

The classification of prisoners is such a practice that is left to the discretion of prison officials. See <u>McCord v. Maggio</u>, 910 F.2d 1248, 1250 (5th Cir.1990). "It is well settled that '[p]rison officials must have broad discretion, free from judicial intervention, in classifying prisoners in terms of their custodial status'." <u>McCord</u>, 910 F.2d at 1250 (quoting <u>Wilkerson v. Maggio</u>, 703 F.2d 909 (5th Cir.1983)). Thus, this court accords state prison administrators wide-ranging deference to adopt and to execute policies and practices that are needed to maintain and preserve order, discipline, and security in prison. See <u>Bell v. Wolfish</u>, 441 U.S. 520, 547 (1979).

In Louisiana, the classification of prisoners is the duty of the Department of Corrections and an inmate, such as Plaintiff, has no right to a particular classification. In addition, "speculative, collateral consequences of prison administrative decisions do not create constitutionally protected liberty interests." <u>Luken v. Scott</u>, 71 F.3d 192, 193 (5th Cir.1995) (citing <u>Meachum v. Fano</u>, 427 U.S. 215, 299 n. 8, 96 S.Ct. 2532, 2540 n. 8 (1976)).

The United States Supreme Court has held that it is for state prison authorities to decide where a state prisoner is to be incarcerated, and that a prisoner has no right to challenge his place of incarceration. See <u>Olim v. Wakinekona</u>, 461 U.S. 238, 103 S.Ct. 1741, 75 L.Ed.2d 813 (1983); <u>Meachum v. Fano</u>, 427 U.S. 215, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976). Under <u>Olim</u> and <u>Meachum</u>, Plaintiff has no right to challenge his place of incarceration.

Accordingly, Plaintiff's claims regarding his classification and place of incarceration are frivolous because they lack an arguable basis in law and in fact, and they should be dismissed with prejudice as frivolous.

**Property Claims**

Plaintiff claims the sex offender workbooks should have been better protected by the staff, including the teacher Mr. Calhoun. He claims an offender got a copy of the Phase 2 workbook and removed two pages from it. He claims that on September 24, 2019, the inmate or one of his friends placed the workbook pages on his bed. Plaintiff claims the inmate placing the workbook pages on his bed was sexual harassment, sex offender hazing, and teasing. He claims his sex offender profile was no longer a secret and he was no longer

safe. Plaintiff claims that on September 24, 2019, Sgt. Normand found his claim regarding the incident to be credible and with merit.

Plaintiff filed this claim pursuant to 42 U.S.C. § 1983 of the Civil Rights Act which provides redress for persons "deprived of any rights, privileges or immunities secured by the Constitution or laws of the United States" by a person acting under color of state law. Accordingly, the initial inquiry and threshold concern of the reviewing court is whether Plaintiff's constitutional rights have been violated. See Parratt v. Taylor, 451 U.S. 527, 107 S. Ct. 1908 (1981).

The property of which Plaintiff was allegedly deprived can constitute "property" within the meaning of the Due Process Clause of the Fourteenth Amendment and its loss is worthy of redress if the loss implicates constitutional rights. See id. at 542, 107 S. Ct. at 1916. However, the Fourteenth Amendment is not a font of tort law to be superimposed upon whatever systems may already be administered by the States. See Baker v. McCollan, 433 U.S. 137, 99 S. Ct. 2689 (1979). A constitutional deprivation of property without due process of law, as differentiated from a state tort law claim, must be intentional and plaintiff must allege specific facts which support such a conclusion.

Absent an intentional deprivation of property where the charge only supports a negligent failure by defendants, a constitutional deprivation does not lie. "[T]he Due Process Clause is simply not implicated by a negligent act of an official causing unintended loss of or injury to life, liberty or property." Daniels v. Williams, 474 U.S. 327, 328, 106 S. Ct. 662, 663 (1986). Moreover, even in instances where intentional deprivation occurs where an adequate state post-deprivation remedy is available, the Due Process Clause is

not implicated.  See Hudson v. Palmer, 468 U.S. 517, 533, 104 S.Ct. 3194, 3204 (1984), on remand, 744 F.2d 22 (4th Cir. 1984); Marshall v. Norwood, 741 F.2d 761, 764 (5th Cir. 1984).  Mere assertions of intentionality are not enough in the absence of specific facts supporting the assertions and "even if the taking were intentional, the state could afford the [plaintiff] due process by providing a post-deprivation remedy for the redress of the unforeseeable, unauthorized injury... alleged." Lewis v. Woods, 848 F.2d 649, 652 (5th Cir. 1988).  Louisiana law provides Plaintiff the opportunity to seek redress for his loss, whether intentional or negligent.  See La. Civ. Code art. 2315.

Furthermore, Plaintiff admits that he was placed in protective custody and transferred to Bossier Medium Correctional Center after the incident for his safety.

Accordingly, Plaintiff has failed to state a claim cognizable under Section 1983.

**Conclusory Claims**

Plaintiff claims Deputy Lyons was a PREA coordinator/Investigator and failed to conduct a proper investigation into his PREA complaint.  A Section 1983 plaintiff has long been required to plead his case with "factual detail and particularity," not mere conclusory allegations.  Elliot v. Perez, 751 F.2d 1472, 1473 (5th Cir. 1985); Hale v. Harney, 786 F.2d 688 (5th Cir. 1986).  The Supreme Court has abolished this heightened pleading standard for claims against municipalities, Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit, 507 U.S. 163, 113 S.Ct. 1160 (1993), but the requirement remains firmly in place for claims against individual public officials.  See Schultea v. Wood, 47 F.3d 1427 (5th Cir.1995) (en banc).

In this case, Plaintiff has named individual prison officials as defendants and is therefore required to give factual details regarding his alleged constitutional rights violations.  Plaintiff has failed to do so as to these claims.

Accordingly, Plaintiff's claims should be dismissed as frivolous and for failure to state a claim on which relief may be granted.

**Threat Claims**

Plaintiff claims Deputy Lindon tried to prevent him from seeking help from the PREA hotline.  He claims Deputy Lindon told him that he would not go home, and his parole would be delayed if he kept writing the parole board and filing grievances in the administrative remedy procedure.  Plaintiff claims Sgt. Bowles threatened to have him removed from treatment and parole because he kept sending messages about his program status.

The Eighth Amendment proscribes prison officials' wanton infliction of unnecessary pain upon a prisoner. It has been held that verbal abuse and harassment do not constitute cruel and unusual punishment as contemplated by the Eighth Amendment and allegations of such, without more, are insufficient grounds for relief under 42 U.S.C. § 1983. Collins v. Cundy, 603 F.2d 825 (10th Cir. 1979); Ellingburg v. Lucas, 518 F.2d 1196 (8th Cir. 1975). Furthermore, the Fifth Circuit Court of Appeals has held that "mere threatening language and gestures of a custodial officer do not, even if true, amount to constitutional violations." Siglar v. Hightower, 112 F.3rd 191, 193 (5th Cir.1997); Lynch v Cannatella, 810 F.2d 1363, 1376 (5th Cir. 1987) citing McFadden v. Lucas, 713 F.2d 143, 146 (5th Cir.), cert. den., 464 U.S. 998, 104 S.Ct. 499, 78 L.Ed.2d 691 (1983).  Even if Plaintiff

has been subjected to verbal abuse and threats as alleged, this claim does not amount to harm sufficient to constitute a constitutional violation.

Accordingly, Plaintiff's claims should be dismissed as frivolous.

**Retaliation Claim**

Plaintiff claims Defendant Fisher-Culpepper told him to stop writing letters and grievances to the Parole Board because it was a misuse of the administrative remedy procedure for multiple reasons and he could receive a disciplinary report for doing it. He claims this was an act of retaliation for exercising his legal right to the administrative remedy procedure.

To state a claim of retaliation an inmate must allege the violation of a specific constitutional right and be prepared to establish that but for the retaliatory motive, the complained of incident–the threat of a rule violation report-would not have occurred. Woods v. Smith, 60 F.3d 1161 (5th Cir. 1995), citing Mt. Healthy City School Board District Bd. Of Education v. Doyle, 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977).

The retaliatory motive alleged by Plaintiff is entirely conclusory as he provides no specific allegations showing that "but for" this motive the threat of a rule violation report would not have occurred since Fischer-Culpepper accused him of misusing the administrative remedy procedure.

Accordingly, Plaintiff's claims regarding retaliation should be dismissed with prejudice as frivolous.

**Disciplinary Board Claims**

Plaintiff claims on December 4, 2019, he appeared for a disciplinary board hearing for the charge of bribery. He claims he was charged with two disciplinary reports written

by Defendant Fischer-Culpepper.  Plaintiff was found guilty of the charge and sentenced to 60 days loss of good time which was suspended.

Plaintiff is seeking monetary damages for an allegedly unconstitutional disciplinary board conviction and sentence.  The United States Supreme Court held that in order to recover damages for an allegedly unconstitutional conviction or sentence or for "harm caused by actions whose unlawfulness would render a conviction or sentence invalid," a prisoner must show that the conviction or sentence has been "reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas." Heck v. Humphrey, 512 U.S. 477, 486–87, 114 S.Ct. 2364, 2372 (1994).

Courts have also extended the holding in Heck to claims seeking injunctive or declaratory relief pursuant to 42 U.S.C. § 1983.  See Edwards v. Balisok, 520 U.S. 641,648, 117 S.Ct. 1584, 1589, 137 L.Ed.2d 906 (1997); Clark v. Stalder, 154 F.3d 186, 190–91 (5th Cir.1998).  Heck involved a civil rights claim brought by a state prisoner. The Court dismissed the Section 1983 suit until plaintiff could demonstrate that his conviction or sentence had been invalidated.  In Edwards v. Balisok, supra, the Supreme Court approved the application of the Heck doctrine to prison disciplinary proceedings.

When a claim comes within the parameters of the Heck teachings, it is not cognizable under 42 U.S.C. § 1983 so long as the validity of the conviction or sentence has not been called into question as defined therein, which requires dismissal of claims not meeting its preconditions for suit. See Johnson v. McElveen, 101 F.3d 423, 424 (5th Cir.1996).

Plaintiff is seeking monetary damages civil rights violations under Section 1983; therefore, he must prove that his disciplinary board conviction or sentence has been invalidated. He has not met this precondition and his claim must be dismissed until such time that he can demonstrate that his disciplinary board conviction or sentence has been invalidated.

**Parole Revocation Claim**

Plaintiff seeks monetary damages and injunctive relief for his parole revocation.

As previously discussed, the United States Supreme Court held that in order to recover damages for an allegedly unconstitutional conviction or sentence or for "harm caused by actions whose unlawfulness would render a conviction or sentence invalid," a prisoner must show that the conviction or sentence has been "reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas." Heck v. Humphrey, 512 U.S. 477, 486–87, 114 S.Ct. 2364, 2372 (1994).

Courts have also extended the holding in Heck to claims seeking injunctive or declaratory relief pursuant to 42 U.S.C. § 1983. See Edwards v. Balisok, 520 U.S. 641,648, 117 S.Ct. 1584, 1589, 137 L.Ed.2d 906 (1997); Clark v. Stalder, 154 F.3d 186, 190–91 (5th Cir.1998). The holding in Heck has been extended to parole revocation proceedings. Littles v. Bd. of Pardons and Paroles Div., 68 F.3d 122, 123 (5th Cir.1995).

Plaintiff is seeking monetary damages and injunctive relief for civil rights violations under Section 1983; therefore, he must prove that his conviction or sentence has been

invalidated.  He has not met this precondition and his complaint must be dismissed until

such time that he can demonstrate that his conviction or sentence has been invalidated.

**Unexhausted Claims**

Plaintiff has made numerous claims that occurred after he filed his complaint on

November 13, 2019.  Congress has commanded that "[n]o action shall be brought with

respect to prison conditions under section 1983 of this title, or any other Federal law, by a

prisoner confined in any jail, prison, or other correctional facility until such administrative

remedies as are available are exhausted." 42 U.S.C. §1997e(a).  Section 1997e requires

Plaintiff to properly exhaust available administrative remedies before filing a Section 1983

suit.  See Woodford v. Ngo, 126 S.Ct. 2378 (2006).  This exhaustion requirement requires

proper exhaustion of administrative remedies in accordance with prison procedures, and

an untimely or otherwise procedurally defective grievance or appeal will not suffice.

Woodford, 126 S.Ct. 2378.  The Fifth Circuit has applied the requirement to claims such

as the use of excessive force, see Wendell, 162 F.3d at 887, and denial of medical care. See

Harris v. Hegmann, 198 F.3d 153 (5th Cir. 1999).  Failure to exhaust administrative

remedies is an affirmative defense, and "inmates are not required to specifically plead or

demonstrate exhaustion in their complaints." Jones v. Bock, 549 U.S. 199, 216 (2007).

However, dismissal may be appropriate when, the complaint on its face establishes the

inmate's failure to exhaust.  See Carbe v. Lappin, 492 F.3d 325, 328 (5th Cir.2007); Hicks

v. Lingle, 370 Fed. Appx. 497, 498 (5th Cir.2010).

Accordingly, Plaintiff's claims that arise after November 13, 2019 should be dismissed for failure to exhaust as he clearly could not have exhausted them before filing this complaint.

## CONCLUSION

Because Plaintiff filed this proceeding in forma pauperis ("IFP"), if this court finds Plaintiff's complaint to be frivolous, it may dismiss the complaint as such at any time, before or after service of process, and before or after answers have been filed.  See 28 U.S.C. § 1915(e); Green v. McKaskle, 788 F.2d 1116, 1119 (5th Cir. 1986); Spears v. McCotter, 766 F.2d 179, 181 (5th Cir. 1985).  District courts are vested with extremely broad discretion in making a determination of whether an IFP proceeding is frivolous and may dismiss a claim as frivolous if the IFP complaint lacks an arguable basis either in law or in fact.  See Hicks v. Garner, 69 F.3d 22 (5th Cir. 1995); Booker v. Koonce, 2 F.3d 114 (5th Cir. 1993); Neitzke v. Williams, 490 U.S. 319, 109 S.Ct. 1827 (1989).

Accordingly;

**IT IS RECOMMENDED** that Plaintiff's claims regarding his dismissal from SHISAP, protective custody classification, transfer, property, threats, retaliation and his conclusory claims be **DISMISSED WITH PREJUDICE** as frivolous and for failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. § 1915(e)(2)(B)(i) and (ii) and his claims occurring after November 13, 2019 be **DISMISSED WITHOUT PREJUDICE** for failure to exhaust administrative remedies pursuant to 42 U.S.C. § 1997e(a).  **IT IS FURTHER RECOMMENDED** that Plaintiff's civil rights claims seeking monetary compensation and injunctive relief for his allegedly unconstitutional

disciplinary board conviction and sentence and parole revocation be **DISMISSED WITH PREJUDICE** as frivolous under 28 U.S.C. § 1915(e) until such time as the Heck conditions are met.

## OBJECTIONS

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b). A party may respond to another party's objection within fourteen (14) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendations set forth above, within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking, on appeal, the proposed factual findings and legal conclusions that were accepted by the district court and that were not objected to by the aforementioned party. See Douglas v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

**THUS DONE AND SIGNED**, in chambers, in Shreveport, Louisiana, on this 17th day of February 2023.

Mark L. Hornsby
U.S. Magistrate Judge